PENNSYLVANIA-READING SEASHORE LINES, APPELLANT,
v. UNIT CONSTRUCTION COMPANY, RESPONDENT.

Submitted October 30, 1936—Decided January 28, 1937.

For the appellant, *Thompson & Hanslein.*

For the respondent, *Emory J. Kiess* (*William Charlton,* of counsel).

The opinion of the court was delivered by

PARKER, J. The suit is by carrier against shipper for freight charges which plaintiff claimed should be paid by the shipper, and which by the terms of the bill of lading are so payable. The trial court allowed, and the Supreme Court approved, the admission of parol evidence to show that the paper-writing which was in duplicate, one part being retained by the carrier and the other part being taken away by the defendant, was not the contract agreed upon by and between the authorized agent of the plaintiff, one Keeper, and the authorized agent of the defendant named McKenna. Apart from the paper, the claim of the defendant shipper as to the facts was in substance that it desired the particular shipment to be forwarded with shipping charges to be collected from the consignee, and that this had been agreed upon between McKenna and Keeper; but that on the arrival of the goods the charges were not so collected as they should have been. There was some testimony for the carrier of an alleged telephone conversation with the Philadelphia office of the plaintiff, which need not be specially considered at this time.

As to the documentary evidence in the case, there were, as we have said, two duplicate originals of the written contract of carriage, namely, the bill of lading, and the evidence showed that the two were originally alike, because they were on printed forms and the written parts were filled in both at once, by means of an intervening sheet of carbon paper. The upper duplicate was delivered to the shipper, who failed to produce it at the trial on proper notice, and the other duplicate was produced by the carrier, and admitted in evidence. Certain additions in ink were made thereon by Keeper after the shipper had gone away with his duplicate; but this was explained at the trial, and the paper is to be considered without reference to them. However, testimony was received for

the defendant over objection and exception that the carrier's duplicate, admitted in evidence without objection and marked as an exhibit, did not express the oral arrangement of the parties, because by its terms it called for liability of the consignor unless the consignor "should sign the following statement :"

"The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

. . . . . . . . . . . . . . .   . . . . . . . . . . . . . . . .
(Signature of Consignor)

If charges are to be prepaid, write or stamp here, 'To be prepaid'

. . . . . . (in ink) . . . . . .Prepaid. . . . .

Received $ . . . . . . . . . . . . . . . . .

to apply in prepayment of the charges on the property described hereon.

. . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . .
Agent or Cashier

Per. .   . . . . . . .   . . . . . . . . . . . . . . .
(The signature here acknowledges only the amount prepaid.)

. . . . . . . . . .  . . . . . . . . . . . . . . . . . . .
Charges Advanced :

$

Penn-Rdg. Seashore Lines,
ATLANTIC CITY, N. J.
       Apr. 6, 1934
W. Schneider, Freight Agent
per

. . . . . . . . . .E. M. Keeper. .  . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Agent must detach and retain this shipping Order and must sign the Original Bill of Lading.

. . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The word "prepaid" was one of the subsequent ink entries and not a part of the paper as originally delivered and retained.

It will be observed, therefore, that the paper retained by the carrier and, of course, the duplicate carried away by McKenna, did not have thereon any signature by or for the consignor stipulating that delivery should not be made without payment of freight, &c.

By the terms of the printed form, especially section 7 of the conditions on the back, as to which there was no alteration at any time, it is provided that "the consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges." By the express terms, therefore, of the duplicate paper, one part of which was retained by the carrier, and the other part delivered to the shipper, the shipper was liable for the charges in the absence of having signed the paragraph reading: "The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges."

The witness McKenna said that he did sign the bill of lading, and this is true; but he did not sign it at the end of the paragraph last above quoted. His signature is to be found on another part of the paper consisting of a note that where the freight rate is dependent on value, shippers are required to state in writing the value of the property, and following it up by the paragraph that "the agreed or declared value of the property is "hereby specifically stated by the shipper to be not exceeding per

"

Then follow two blank lines and the words "Unit Construction Co. Shipper    Per McKenna, Jas."

Of course, the signature of McKenna is utterly nugatory as to stating any value, and nugatory, as we view it, for any other purpose connected with the terms of the contract. The natural surmise, based on the evidence that was admitted by

the trial court, would be that McKenna made a mistake as to the place where he should sign in order to avoid the shipper's liability; but he did not so testify, nor do we think that he should have been allowed to testify to that effect in an action at law based on the contract. The shipper's defense was clearly predicated on the theory that the printed paper, in form a bill of lading, did not state the terms to which the parties had orally agreed and that the real agreement was to be proved by parol evidence. The Supreme Court held that the evidence on this line, received by the trial court, was competent; but to this we cannot agree. The rule, as stated in 10 *C. J.* 194, and amply supported by the authorities, is that "a bill of lading delivered by the carrier to the shipper and accepted by the latter is presumed to constitute the contract for carriage, * * * whether or not he signed the instrument, and although he did not read it. The shipper receiving the bill of lading is conclusively presumed to have read it and to have acquiesced in its terms, in the absence of fraud, imposition, or mistake * * *." And again at page 198: "parol evidence is not admissible, in the absence of fraud or mistake, to vary its terms or to show that the contract was different from that shown by the instrument." It will suffice for present purposes to cite on this point the New York cases of *Long* v. *New York Central Railroad Co.,* 50 *N. Y.* 76, and *Hill* v. *Syracuse, &c., Railroad Co.,* 73 *N. Y.* 351.

Where it is claimed that a written contract was procured by fraud, particularly by intentional misrepresentation of its actual content, the door is open to parol testimony to show that such written contract was not the real agreement of the parties. *Diamond Rubber Co.* v. *Feldstein,* 112 *N. J. L.* 514. But we can discern no intimation of any such fraud in this case. Again, where the written paper is the product of an honest mistake as to its terms, the rule is well settled, and needs no citation, that equity will relieve either by reforming the contract or abrogating it, although the evidence of mistake must be clear and convincing. *Birch* v. *Baker,* 81 *N. J. Eq.* 264; *Ehnes* v. *Monroe Loan Society,* 120 *Id.* 599; 187 *Atl. Rep.* 180. But this relief is for equity alone.

In the case at bar the attempt of the defendant was to show that the written paper in duplicate, a copy of which had been retained by the carrier and a copy delivered to and retained by the shipper without objection or protest, was not the real contract of the parties. In the absence of allegations and proof of fraud, the law is, of course, elementary and settled in this state mainly on the authority of *Naumberg* v. *Young,* 44 *N. J. L.* 331, that where the parties have put the contract in writing, the writing shall be the only evidence of the contract as finally concluded, and that parol evidence will not be admitted at law to contradict or alter its terms.

We conclude, therefore, that it was not competent for the District Court to receive parol testimony to show that the parties had agreed on something different from that expressed in writing in regard to the payment of the freight charges, the suit being at law in which reformation is impracticable and there being no allegations of fraud.

The judgments of the Supreme Court and of the District Court will therefore be reversed.

As to the authorities cited in the Supreme Court opinion, the case of *Globe and Lamp Co.* v. *Kern Gaslight Co.,* 67 *N. J. L.* 279, is not in point, as it refers to testimony in regard to certain letters written after the contract in question had been executed.

The case of *Christie* v. *Lalor,* 116 *N. J. L.* 23, is not in point as it rests on the doctrine of fraud in the procurement of the contract, which has already been adverted to above.

Let the judgment be reversed, to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, LLOYD, CASE, BODINE, HETFIELD, DEAR, WELLS. WOLFSKEIL, RAFFERTY, COLE, JJ.   13.